```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA              :

    -against-                          :
                                              10 Cr. 965 (CM)
HIRAM MONSERRATE,                      :

            Defendant.                 :

- - - - - - - - - - - - - - - - - - -X
```

## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
## IN OPPOSITION TO PRE-TRIAL MOTIONS OF HIRAM MONSERRATE

```
                              PREET BHARARA
                              United States Attorney for the
                              Southern District of New York
                              One St. Andrew's Plaza
                              New York, New York 10007
```

```
Brent S. Wible
Glen G. McGorty
Assistant United States Attorneys
    -Of Counsel-
```

## TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   The Indictment. . . . . . . . . . . . . . . . . . . . 1

    B.   Post-Indictment Discovery. . . . . . . . . . . . . . .3

ARGUMENT

     I.  Counts One and Two Adequately Allege Violations
        of Title 18, United States Code, Section 1341. . . . .4

    II.  The Motion To Remove Surplusage Should Be Denied. . . 9

    III. The Motion for a Bill of Particulars Should
         Be Denied. . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 19

### PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the pretrial motions of defendant Hiram Monserrate.  In his pretrial motions, the defendant has moved (1) to dismiss both counts of the Indictment on the ground that they fail to adequately allege violations of Title 18, United States Code, Section 1341 (Br. 2-10);[1] (2) to strike purported "surplusage" from the Indictment (Br. 11-15); and (3) for a bill of particulars (Br. 16-18).  For the reasons set forth below, the defendant's motions should be denied in their entirety.

### BACKGROUND

**A.   The Indictment**

On or about October 18, 2010, a grand jury sitting in this District returned Indictment 10 Cr. 965 (CM), which contains detailed factual allegations and charges the defendant, Hiram Monserrate, in two counts.

Both Counts One and Two of the Indictment relate to a scheme by which the defendant, while a member of the New York City Council ("Council"), allocated Council discretionary funds to the Latino Initiative for Better Resources and Empowerment, Inc. ("LIBRE"), a non-profit organization, then used some of those funds to pay certain expenses related to his unsuccessful primary election campaign for the Democratic Party's nomination to run

---

[1] "Br." refers to the brief Monserrate submitted in support of his pre-trial motions.

for a New York State Senate seat in 2006.  Specifically,
Monserrate used LIBRE's funds (1) to pay workers to conduct a
voter-registration drive in Monserrate's district, which
Monserrate manipulated by having LIBRE wait until shortly before
the deadline to vote in the primary election to actually register
the voters, giving him an advantage because he was the only
candidate aware that these individuals would be eligible to vote
(Indictment ¶¶ 11-12); (2) to pay workers to gather signatures on
designating petitions so that Monserrate would be included on the
ballot for the primary election, and to pay workers to canvass
residents of Monserrate's district on his behalf (Indictment
¶¶ 13-14); and (3) to pay LIBRE employees for time spent working
on Monserrate's political campaign (Indictment ¶ 15).

　　　The Indictment further alleges the specific mechanism by
which members of the Council allocate discretionary funds to non-
profit organizations like LIBRE.  The Indictment describes the
process by which a member of the Council allocates money to a
non-profit organization, which then enters into a contract with a
New York City agency that actually disburses the allocated funds
to the organization.  (Indictment ¶ 5).  This intermediary City
agency disburses funds to the organization based on expense
reports submitted by the organization, and the agency could
decline to disburse funds – or even terminate the organization's
contract – if the organization fails either to provide the

services described in its contract or to account properly for its expenditures.  (Indictment ¶ 5).

As to LIBRE specifically, the Indictment alleges that LIBRE's use of discretionary funds for political purposes was not permitted under its contracts with a City agency, and that LIBRE failed to disclose that it had spent tens of thousands of dollars to support Monserrate's political campaign in expense reports it submitted to that City agency so that it could be reimbursed. (Indictment ¶¶ 8, 9, 18(d)).  Additionally, the Indictment alleges that under the New York City Procurement Policy Board rules – which applied to allocations of Council discretionary funds – Monserrate had a duty to report LIBRE's improper expenditures, but failed to do so.  (Indictment ¶¶ 6, 9).

In connection with this fraudulent scheme, Count One charges the defendant with conspiracy to commit mail fraud, in violation of Title 18, United States Code, Section 1349, and Count Two charges the defendant with mail fraud, in violation of Title 18, United States Code, Sections 1341 and 2.

**B.   Post-Indictment Discovery**

On or about October 19, 2010, the defendant surrendered and was arraigned on the Indictment.  On November 3, 2010, the Government produced the bulk of the discovery to the defendant, namely, a DVD containing over 7,500 pages of documents, as well as the contents of several email accounts.  The Government

3

thereafter produced certain supplementary discovery.  Among other items, the discovery includes contracts between LIBRE and a New York City agency, expense reports through which LIBRE sought reimbursement from this City agency for certain political expenditures, checks disbursed to LIBRE on the basis of these expense reports, and records of New York City's Financial Management System indicating that all but one of these checks was mailed from Manhattan to LIBRE's office in Queens, New York.

**ARGUMENT**

I.   **Counts One and Two Adequately Allege Violations of Title 18, United States Code, Section 1341**

The defendant first moves to dismiss Counts One and Two of the Indictment on the ground that they fail to adequately allege a violation of Title 18, United States Code, Section 1341. Specifically, Monserrate contends that "the alleged misrepresentations either occurred *after* the money had already been allocated and *after* LIBRE allegedly provided political services to Monserrate, or that the alleged misrepresentations were not made for the purpose of obtaining money or property for such improper purposes."  (Br. 2 (emphasis in original)). Monserrate thus argues that the Indictment does not properly allege a fraud because the misrepresentations and material omissions referenced in the Indictment merely concealed a misuse of funds and were not made in order to obtain funds. (Br. 7).

4

This argument misapprehends the allegations in the Indictment and is wholly lacking in merit.

As a preliminary matter, it is well-settled that "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling* v. *United States*, 418 U.S. 87, 117 (1974); *see also* Fed. R. Crim. P. 7(c) (requiring that an indictment contain a "plain, concise and definite written statement of the essential facts constituting the offense charged"). For decades, the Court of Appeals for the Second Circuit has repeatedly held that to satisfy the requisite notice requirements and the requirements of Rule 7(c), "an indictment need only track the language of the statute and, if necessary to apprise the defendant of the nature of the accusation against him . . . state time and place in approximate terms." *United States* v. *Flaharty*, 295 F.3d 182, 198 (2d Cir. 2002) (quotation and citation omitted) (holding that the indictment at issue sufficiently charged an offense because it closely tracked the relevant statutory language); *see also United States* v. *Frias*, 521 F.3d 229, 235 (2d Cir. 2008) (quoting *Flaharty*); *United States* v. *Alfonso*, 143 F.3d 772 (2d Cir. 1998) (noting that "[i]t is well settled that an indictment is sufficient if it, first,

contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense" and further reiterating that "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime") (quotations and citations omitted); *United States* v. *Citron*, 783 F.2d 307, 314 (2d Cir. 1986) ("[w]here . . . an indictment tracks the statutory language and specifies the nature of the criminal activity . . . it is sufficiently specific to withstand a motion to dismiss") (quotation and citation omitted).

Here, both Counts One and Two unquestionably track the relevant statutory language, and Monserrate does not contend otherwise.  Moreover, the Indictment includes a narrative about the facts that form the basis of the grand jury's decision to return the Indictment.  The first fifteen paragraphs of the Indictment contain detailed factual allegations about the conduct giving rise to the charged offenses.  Those fifteen paragraphs specifically identify, among other things, (1) when the crime took place; (2) where the crime took place; and (3) the manner in which the defendant committed the crime.

Given that Counts One and Two of the Indictment track the relevant statutory language and that the Indictment includes

fifteen paragraphs of detailed factual allegations explaining the basis for the charges, the Indictment more than adequately informs the defendant of the charges against him and adequately enables him to mount a defense. *Cf. United States* v. *Collazo*, No. 04 Cr. 297 (DAB), 2004 WL 2997843 (S.D.N.Y. Dec. 22, 2004) (holding that the indictment in a narcotics case was sufficient because "it lays out all the elements of the charged offense as well as approximate statements of time and place" and noting that the indictment, coupled with other factual detail provided to the defendant, satisfied "concerns of notice to the Defendant and his ability to make an adequate defense"). No more is required.

Monserrate nonetheless purports to identify factual allegations in the Indictment which he claims show that no funds were actually procured through misrepresentations or material omissions. Monserrate is mistaken, because the Indictment alleges that discretionary funds were obtained through fraud. In arguing otherwise, Monserrate misreads the Indictment by ignoring the important distinction between an allocation of Council discretionary funds and an actual disbursement of those funds.

The Indictment plainly alleges that when the Council allocates discretionary funds to a non-profit organization, the organization does not immediately receive any such funds. (Indictment ¶ 5). Instead, the organization must first enter into a contract with a New York City agency, which both disburses

the funds and oversees the manner in which those funds are used.
(Indictment ¶ 5).  The contracting agency disburses the allocated
funds over the course of a fiscal year after receiving expense
reports from the organization that itemize the organization's
expenses and seek reimbursement for those expenses.  (Indictment
¶ 5).  If the organization fails to account properly for its
expenditures or fails to abide by the terms of the contract
(which sets forth the specific purpose or purposes for which the
discretionary funds were allocated), the agency may decline to
disburse the allocated funds and may even cancel the contract.
(Indictment ¶ 5).  Accordingly, false statements made to a
contracting agency in expense reports in order to procure the
disbursement of allocated funds can properly give rise to fraud
charges.

As to LIBRE specifically, the Indictment alleges that LIBRE
submitted to a City agency expense reports seeking reimbursement
in which it failed to disclose that it had spent thousands of
dollars to support Monserrate's political campaign.  (Indictment
¶ 9).  More specifically, Count One of the Indictment alleges as
an overt act that, in October 2006, a co-conspirator not named in
the Indictment submitted an expense report for the month of June
2006 indicating that LIBRE had paid numerous individuals for
"stipend" work, when in fact those individuals had participated
in LIBRE's improper voter-registration, petition-gathering, and

8

canvassing activities.  (Indictment ¶ 18(d)).  These allegations make plain that, through its expense reports, LIBRE sought disbursements of Council discretionary funds for political activity by making misrepresentations or material omissions as to the specific nature of the expenses for which it sought reimbursement.[2]

For all of these reasons, the Government respectfully submits that the Court should deny the defendant's motion to dismiss the Indictment.

## II.   <u>The Motion To Remove Surplusage Should Be Denied</u>

Monserrate next asks the Court to strike certain allegations from the Indictment, pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure, contending that they are both "irrelevant" and "prejudicial."  (Br. 11).  Monserrate's motion should be denied.

"Motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial." *United*

---

[2]Monserrate's challenge to the allegations concerning his use of LIBRE to support his 2005 campaign for reelection to the Council requires a somewhat different analysis. (Br. 6).  The Indictment alleges that in advance of the 2005 primary election, Monserrate raised private funds for LIBRE, then used those LIBRE funds to pay workers to campaign on his behalf.  (Indictment ¶ 10).  These allegations are primarily relevant to show that Monserrate acted knowingly and intentionally in using LIBRE (and, by extension, LIBRE's Council discretionary funds) to support his 2006 Senate campaign because he had previously used LIBRE to support his 2005 Council reelection campaign.

*States* v. *Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990); *see also United States* v. *Mulder*, 273 F.3d 91, 99-100 (2d Cir. 2001); *United States* v. *Hernandez*, 85 F.3d 1023, 1030 (2d Cir. 1996). Notwithstanding Monserrate's citation to non-binding precedent from other jurisdictions, the Court of Appeals for the Second Circuit has clearly held that, "'[I]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken.'" *United States* v. *Scarpa*, 913 F.2d at 1013 (quoting *United States* v. *DePalma*, 461 F. Supp. 778, 797 (S.D.N.Y. 1978)). Moreover, as Judge Sand has observed, "[a]lthough the Federal Rules of Criminal Procedure grant the Court authority to strike surplusage from an indictment . . . , [i]t has long been the policy of courts within the Southern District to refrain from tampering with indictments." *United States* v. *Bin Laden*, 91 F. Supp. 2d 600, 621 (S.D.N.Y. 2000) (citations omitted).

As a preliminary matter, it is premature to address the defendant's motion to strike now, before the Court has seen the Government's evidence. "The defendant may renew [the] motion after the presentation of the government's case if it fails to offer proof of [the indictment's allegations.]" *See United States* v. *Scarpa*, 913 F.2d at 1011 (quoting *Scarpa* district court's adoption of this procedural approach to surplusage motion). There is no risk of unfair prejudice to the defendant

10

from such an approach because the Indictment presumably will not be read or presented to the jury, if at all, until after the evidentiary portion of the trial has ended. *See United States* v. *Umeh*, 762 F. Supp. 2d 658, 666 (S.D.N.Y. 2011) ("[T]he Court agrees with the Government that the motion [to strike surplusage] is premature in any event, as the proper time to weigh the relevance of evidence against its potential prejudicial effect is during the trial itself."). Of course, if the Court does not provide the jury with a copy of the Indictment or read the Indictment to the jury, Monserrate's motion should be denied on that basis alone. *See id.* ("[T]he defendant will suffer no actual prejudice from the inclusion of this reference in the Indictment, since it is this Court's practice never to submit an Indictment to the jury. Accordingly, the motion to strike surplusage is denied.").

In any event, the motion is without merit. Each of the purportedly irrelevant portions of the Indictment referenced by Monserrate is in fact clearly relevant to the crimes charged and/or potential defenses. Monserrate first challenges the references to the New York City Charter and the New York Procurement Policy Board Rules. These rules are highly relevant to the charged offenses. The Charter provision quoted in the Indictment makes plain that Council members such as Monserrate are prohibited from using their elected positions for personal

11

gain which, the Government will argue, includes using Council discretionary funds to pay campaign expenses.  (Indictment ¶ 2). The Procurement Rules referenced in the Indictment provide that public servants involved in contracting (including the allocation and disbursement of Council discretionary funds) are obliged to report any corruption or unethical practices.  (Indictment ¶ 6). Taken together, these provisions establish that Monserrate had a duty to disclose LIBRE's improper use of Council discretionary funds for political activities.  Such a duty is a basis for holding Monserrate responsible for material omissions regarding LIBRE's use of Council discretionary funds for partisan political purposes.  The rules concerning tax-exempt non-profit organizations are also plainly relevant to the charged offenses, because Monserrate well knew, given LIBRE's tax-exempt status, that it was not permitted to engage in partisan political activities without jeopardizing that status.

The rules cited in the Indictment are thus highly relevant to the charged offenss, and, contrary to Monserrate's contention, there is no suggestion in the Indictment – and the Government will make no suggestion at trial – that proof that Monserrate violated these rules is sufficient, standing alone, to make him guilty of the charged offenses.  (Br. 14).  Nor do the references to these rules in any way suggest that the Government is proceeding on an honest-services theory of mail fraud, as

Monserrate contends.  (Br. 14).  The Government obviously is not
doing so.  Accordingly, there is no basis to strike the
references to these rules as surplusage.

Nor is there any basis whatsoever to strike the allegations
in paragraph 5 of the Indictment, which describe Council
discretionary funds generally, including the manner in which they
are allocated by the Council and disbursed by New York City
agencies.  These allegations are plainly relevant as background
for the evidence concerning Monserrate's misuse of discretionary
funds.  Without such background, the jury will be left with
little understanding of Council discretionary funds, which will
occupy a central place in the Government's case at trial.
Moreover, the specific allegations regarding the procedures that
City agencies follow in disbursing discretionary funds are
particularly relevant, because the Government will prove at trial
that a City agency disbursed funds to LIBRE based on
misrepresentations or material omissions made in expense reports
submitted to it, as alleged in the Indictment.  These allegations
therefore should not be struck.

Finally, despite Monserrate's complaint that certain other
allegations are "so detailed as to constitute a 'speaking
indictment'" (Br. 14), there is no basis for striking the
allegations regarding LIBRE's mission statement (Indictment ¶ 7),
Monserrate's recruiting of certain individuals to work for LIBRE

13

(Indictment ¶ 7), or the way in which LIBRE workers conducted a voter-registration drive to benefit Monserrate's political campaign (Indictment ¶ 12).  The mission statement is relevant to show that LIBRE did not hold itself out as a political organization.  Monserrate's involvement in selecting the chair of LIBRE's board of directors and two executive directors is highly relevant in establishing Monserrate's close relationship with LIBRE, which helps to explain why he used it – and not some other organization – to further his political ambitions.  Finally, the allegations about the partisan voter-registration drive form a central part of the charged fraud and, therefore, clearly are properly included in the Indictment.

Monserrate's motion to strike portions of the Indictment should thus be denied on any one of several grounds – as premature, moot, or meritless.

### III. **Monserrate's Motion for a Bill of Particulars Should Be Denied**

Finally, Monserrate contends that he is entitled to a bill of particulars that identifies (1) each misrepresentation or material omission made; and (2) each corresponding disbursement of funds.  (Br. 18).  Monserrate also seeks a formal disavowal that the Government is proceeding on a theory of honest-services fraud.  Although the Government reiterates that it has not charged Monserrate with honest-services mail fraud, for the

reasons set forth below, no bill of particulars is warranted here.

The purpose of a bill of particulars under Rule 7(f) of the Federal Rules of Criminal Procedure is to "identify with sufficient particularity the nature of the charge pending against [a defendant], thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States* v. *Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). However, "if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *Id.* In exercising its discretion in deciding whether or not to order a bill of particulars, "the court must examine the totality of the information available to the defendant – through indictment, affirmations, and general pre-trial discovery." *United States* v. *Bin Laden*, 92 F. Supp. 2d 225, 233 (S.D.N.Y. 2000).

A bill of particulars is neither a general investigative tool for the defense, *United States* v. *Salazar*, 485 F.2d 1272, 1277-78 (2d Cir. 1973), nor a device to compel disclosure of the Government's evidence prior to trial, *see, e.g.*, *United States* v. *Gottlieb*, 493 F.2d 987, 994 (2d Cir. 1974). In particular, the Government is not required to disclose:

> The manner in which it will attempt to prove the charges, *United States* v. *Wilson*, 565 F. Supp. 1416, 1439 (S.D.N.Y. 1983), *disagreed with on other grounds by United States* v. *Reed*, 773 F.2d 477 (2d Cir. 1985);

The precise manner in which the crimes charged in the indictment were committed, *United States* v. *Andrews*, 381 F.2d 377, 377-78 (2d Cir. 1967); or

Information that would, in effect, provide the defendant with a preview of the Government's case before trial, *United States* v. *Simon*, 30 F.R.D. 53, 55 (S.D.N.Y. 1962).

A bill of particulars is unnecessary here, because the detailed allegations in the Indictment, combined with the ample discovery that has been produced to Monserrate, clearly specify the nature of the charges against Monserrate sufficiently to enable him to prepare a defense. Any suggestion to the contrary is simply mistaken.

The Indictment plainly alleges that Monserrate allocated Council discretionary funds to LIBRE which were actually disbursed to LIBRE pursuant to contracts with City agencies. (Indictment ¶¶ 5, 8). The Indictment further alleges that LIBRE improperly used over $100,000 of these funds in support of Monserrate's own political campaign, that Monserrate failed to disclose this fact although required to do so by the New York City Procurement Policy Board Rules, and that two different LIBRE employees submitted expense reports to a City agency in order to obtain disbursements of discretionary funds in which they failed to disclose LIBRE's political activities. (Indictment ¶¶ 5, 8-9). In fact, the Indictment specifically alleges as an overt act that, in October 2006, a co-conspirator submitted to a City agency "an expense report for the month of June 2006 indicating

16

that LIBRE had paid numerous individuals for 'stipend' work, when these individuals had actually participated in LIBRE's voter-registration, petition-gathering, and canvassing activities." (Indictment ¶ 18(d)).

The discovery materials further elucidate the allegations against Monserrate.  These materials include all of the relevant expense reports (including the expense report dated in or about October 2006 that is alleged as an overt act in furtherance of the conspiracy charged in Count One of the Indictment), which are contained in the contract files for LIBRE's contracts with the City agencies that the Government produced to the defendant. Additionally, the Government has produced images of over twenty checks that New York City issued to LIBRE on the basis of these expense reports, only one of which indicates it was to be delivered by hand rather than by mail.  Records of New York City's Financial Management System, which the Government has also produced in discovery, further confirm the dates on which these checks were mailed to LIBRE.  Accordingly, the defendant already has in his possession documents in which misrepresentations and/or material omissions were made, as well as each of the payments that was mailed to LIBRE on the basis of those misrepresentations or material omissions.

As to Monserrate's request that the Government "formally disavow" that it is proceeding against him on an honest-services

fraud theory (Br. 18), the Government plainly has not charged Monserrate with that crime.  Moreover, the Government is well aware that the honest-services fraud statute is now limited to bribery and kickback schemes, and has not alleged any such offense here.  Accordingly, the Government has no difficulty in reiterating what should already be clear: the Government is not proceeding on an honest-services fraud theory

In short, the Government has provided Monserrate with ample information to prepare his defense.  Through the detailed allegations set forth in the Indictment and the discovery materials, the Government has "identif[ied] with sufficient particularity the nature of the charge pending against him, thereby enabling the defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense."  *Bortnovsky*, 820 F.2d at 574.  Accordingly, Monserrate's motion for a bill of particulars should be denied.

## **CONCLUSION**

For the foregoing reasons, the defendant's pretrial motions should be denied in their entirety.

Dated:     New York, New York
           July 14, 2011

                         Respectfully submitted,

                         PREET BHARARA
                         United States Attorney for the
                         Southern District of New York


           By:  _____/s_____
                         Brent S. Wible/Glen G. McGorty
                         Assistant United States Attorneys
                         Tel.: (212) 637-2307/2505

AFFIRMATION OF SERVICE

BRENT S. WIBLE, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury:

I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York.  On July 14, 2011, I caused copies of the Government's Opposition to the Pre-Trial Motions of Defendant Hiram Monserrate to be delivered by ECF and e-mail to:

James E. Neuman, Esq
100 Lafayette Street, Suite 501
New York, NY 10013
Email: neuman@nyappeals.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated:  New York, New York
        July 14, 2011


                    _____/s_____
                    Brent S. Wible
                    Assistant United States Attorney